IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 7 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, AS SUBROGEE OF LOWE-NORTH CONSTRUCTION<br>Plaintiffs,<br><br>vs.<br><br>MOBILE CRANE SERVICE, INC., JESUS FRANCISCO AVALOS, RS INFORMATION SYSTEMS, INC. and DAVE BRUGGEMAN, INDIVIDUALLY and d/b/a CASCADE SUMMIT ELECTRIC<br>Defendants. | § § § § § § § § § § § § § § | C.A. NO. B-04-091 |

### DEFENDANT DAVE BRUGGEMAN, INDIVIDUALLY and d/b/a CASCADE SUMMIT ELECTRIC'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, Dave Bruggeman, Individually and d/b/a Cascade Summit Electric, and files this his Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and moves this Court to grant summary judgment, dismissing Plaintiff, Zurich American Insurance Company and Third-Party Plaintiff Mobile Crane Service, Inc.'s claims against him on the grounds that there is no genuine issue of material fact, and thus Bruggeman is entitled to judgment as a matter of law. In support of this Motion, the Defendant would show as follows:

I.

### Evidence Relied Upon

In support of this Motion for Summary Judgment, the Defendant relies upon the pleadings on file, the applicable Texas and Federal case law and statutes, and the evidence attached hereto and incorporated herein by reference. The evidence attached consists of the following exhibits:

51739:1112545.1:082304

(1)   Exhibit A:   Affidavit of Dave Bruggeman;

(2)   Exhibit B:   Affidavit of Mack Booth;

## II.

### Introduction and Summary of Argument

Defendant and Third-Party Defendant Dave Bruggeman was hired by Lowe-North Construction to provide electrical services for the National Weather Service. Specifically, he was contracted to provide electrical panel work inside existing buildings, new wiring, and terminations to a new structure and to perform electrical tests. On March 27, 2002, Bruggeman began the electrical work. On this date, while he was on the construction site, a crane operated by a Mobile Crane Service, Inc. employee moved the shelter that Bruggeman was hired to wire from a delivery trailer. Bruggeman witnessed the operation, and informed Mack Booth, Lowe-North's on site superintendent, that the crane appeared to be operating erratically, but Bruggeman took no part in directing the movements or operation of the crane. The shelter was dropped, allegedly causing property damage that is the basis of this lawsuit.

Plaintiff Zurich American Insurance Company, as subrogee of Lowe-North Construction brought a cause of action against Mobile Crane Service, Inc, the crane operator Jesus Avalos, and Dave Bruggeman d/b/a Cascade Summit Electric and RS Information Systems, Inc., alleging that the property damage was caused as a result of their negligence. Plaintiff alleges that the Defendants failed to exercise ordinary and reasonable care in 1) unloading and placing the shelter, 2) securing the shelter before it was lowered, and 3) lowering the shelter into its installation position, and that Dave Bruggeman was negligent in 1) allowing a lighter crane to be used for the work, 2) providing negligent supervision of the work, 3) failing to supervise the crane operator's work, and 4) failing

to adequately and carefully direct and supervise the crane's contracting, delivery, usage and operations.

Defendant Mobile Crane Service, Inc. also brought causes of action for contribution and indemnity against Cascade Summit Electric alleging that Bruggeman negligently exercised control over Mobile's employee, Avalos.

Bruggeman had no duty to, nor did he take part in arranging for Mobile's crane to be on the site. He was merely hired to complete the electrical work and perform tests associated with the project. Similarly, Bruggeman did not direct nor did he have a duty to direct the crane operator's work. Bruggeman simply had the misfortune of witnessing the incident made the basis of this suit. Because Bruggeman did not have a duty to arrange or supervise the operations of the crane, and because he did not take any action to direct or supervise the crane operator, the causes of action against Bruggeman and Cascade Summit Electric should be dismissed.

### III.

### Argument and Authorities

Federal Rule of Civil Procedure 56(b) provides that a defendant may, at any time, move for summary judgment, with or without supporting affidavits. If the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits filed with the Court show that there is no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law and summary judgment is proper. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis of the motion, and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. When the nonmoving party bears the

burden of proof at trial on a dispositive issue, and a proper summary judgment motion is made, the nonmoving party must go beyond the pleadings, and by her own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing a genuine issue which would justify trial. *Id.* at 324.

Under Texas law, for a cause of action for negligence to lie 1) the defendant must owe a legal duty to the plaintiff; 2) the defendant must breach the duty; and 3) the breach must proximately cause the plaintiff's injury. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998), *cert. denied*, 119 S.Ct.546 (1998).. The issue of whether a legal duty exists is a matter of law for the Court. *Id.* The existence of a duty is a threshold issue. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). When determining if a duty exists, courts consider the risk, foreseeability, and likelihood of injury, and weigh these factors against the social utility of the actor's conduct, the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). The dominant consideration is foreseeability of the risk. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987); *Lawson v. B-Four Corporation*, 888 S.W.2d 31, 34 (Tex. App. - Houston [1st Dist.] 1994. If there is no reason to anticipate the injury, no duty arises to act to prevent the unanticipated injury. *Lawson*, 888 S.W.2d at 34.

In the present case, Bruggeman did not owe Lowe-North a duty to secure the shelter, unload the shelter or lower the shelter into its final placement, nor did he owe Mobile Crane a duty to direct its employees. Bruggeman was hired to perform electrical work. *See* Exhibit "A" Affidavit of Dave Bruggeman. The scope of the work for which he was hired did not include unloading, securing, or placing the shelter or directing the crane operator. *Id.* Further, the common law and statutory laws

of Texas do not create such duties for Bruggeman.

Further, his actions and omissions did not proximately cause the incident made the basis of this suit. The only actions that Bruggeman took in relation to the crane's operation were to get out of the way and to inform Lowe-North's superintendent that the crane appeared to be operating erratically. *See* Exhibit "A" Affidavit of Dave Bruggeman; *See* Exhibit "B" Affidavit of Mack Booth. Bruggeman did not take any part in planning, securing or directing the crane's operations. *Id.* Bruggeman did not communicate verbally with the crane operator, nor did he signal to the crane operator. *Id.* Bruggeman has no training in coordinating the movement of a crane, nor is he familiar with the work of a flag man. *Id.*

Because Bruggeman did not have a duty to the Plaintiff and/or the Third-Party Plaintiff to protect against the negligence of Mobile Crane and because none of his acts or omissions proximately caused the injury made the basis of this lawsuit, Plaintiff and Third-Party Plaintiff's causes of action for negligence against him should be dismissed.

## IV.

## Conclusion

The undisputed summary judgment evidence establishes that Bruggeman owed no duty to Plaintiff or Third-Party Plaintiff under the circumstances. Texas law imposes no duty upon Bruggeman. Further, Bruggeman's actions and omissions did not proximately cause the injuries made the basis of this lawsuit. Thus, Bruggeman is entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendant/Third-Party Defendant Dave Bruggeman individually and d/b/a Cascade Summit Electric moves this Court to grant his Motion for Summary Judgment, for a Judgment in his favor against all claims brought by the Plaintiff and

Third-Party Plaintiff in this action, for an award of its costs against the Plaintiff and Third-Party Plaintiff, and for all other relief to which it is entitled.

                Respectfully submitted,

*[signature]*

Will W. Pierson
Federal I.D. No. 1931
State Bar No. 16003100
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808 Telephone
(361) 884-7261 Facsimile
ATTORNEY FOR DEFENDANTS/
THIRD PARTY DEFENDANTS

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record by the method indicated below on this the 3rd day of September 2004.

**VIA FACSIMILE (713) 861-7100**
Melissa Nance Murrah
Steve Ryan
Kelly, Smith & Murrah, P.C.
4305 Yoakum Boulevard
Houston, Texas 77006

**VIA FACSIMILE (956) 630-6570**
Lynse S. Larance
Skaggs & Gonzales, L.L.P.
710 Laurel Ave.
McAllen, Texas 78501

**VIA FACSIMILE (956) 548-2549**
Nancy L. Masso
Assistant United States Attorney
600 E. Harrison Street, Suite 201
Brownsville, Texas 78520

**VIA FACSIMILE (956) 630-0189**
Jody Ray Mask
Thornton, Summers, Biechlin, Dunham & Brown, L.C.
418 East Dove Avenue
McAllen, Texas 78504

**Of Royston, Rayzor, Vickery & Williams, L.L.P.**

| | | |
|---|---|---|
| STATE OF OREGON | § | |
| | § | **<u>AFFIDAVIT</u>** |
| COUNTY OF HOOD RIVER | § | |

BEFORE ME, the undersigned authority, on this day appeared David Bruggeman, who is personally known to me, and first being duly sworn according to law upon his oath deposed and said:

My name is David Bruggeman. I am over 18 years of age. I have never been convicted of a felony. I am fully competent to make this affidavit and I am not under the influence of alcohol or drugs or any other chemical that might otherwise affect my testimony. I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without coercion, favor, offer of favor by any person or persons whomsoever.

I am the sole proprietor of Cascade Summit Electric located in Hood River, Oregon. During March of 2003, I was contacted by Lowe-North Construction and asked to provide electrical services on projects where they were installing electrical equipment for the National Weather Service. Lowe-North provided me with a schedule showing that they would mobilize their crew at the Brownsville, Texas NWS office on March 18 and plan to complete the job on March 29. The electrical work that I was to provide would consist of electrical panel work inside existing buildings, new wiring and terminations to the new shelter, and electrical tests. This work would need to be performed onsite between the time of the arrival of the new shelter and the project completion date.

I coordinated with Mac Booth, the Lowe-North superintendent, as to which day he planned to set the new shelter. I left Portland, Oregon on March 26 arriving at the NWS office in Brownsville at 8:00 a.m. on March 27. I began my electrical work inside the Nexrad generator building and a couple of hours later I could see that the crane crew had arrived. The crane began to



setup approximately 20 feet from the open generator doorway where I was working. I did not have any verbal contact with the crane crew nor did I discuss the planned lift with Mr. Booth. While working on a panel near the doorway, I observed behind me that the crane lifted the new shelter from the delivery trailer. I had not heard anyone onsite give any warning or communicate to me that the lift had begun. At the moment that the building lifted from the truck I stopped work and moved to observe from a safe position, as the doorway I had been working in was in close proximity and in the direct path of the crane's swing radius.

At this point, I observed that the crane operator seemed to be moving the shelter in the air erratically and much too fast for the close clearances to the existing multiple structures on the job site. This opinion was based merely on my experience of electrical contracting with Lowe-North Construction over the last 10 years and being on their job sites while their crews have set over 100 shelters on sites very similar to this one. I did not observe anyone on the ground directing the crane operator through hand signals or verbally during this time. I could see from where I was standing that the crane was swinging the shelter dangerously close to hitting an outside electrical 200 Amp three phase switch. Mack Booth was approximately 15 feet away and seemed to be unaware of this problem, so I verbally cautioned him about this. Mr. Booth apparently becoming more concerned about the problems with the crane operator's movements and position called for the crane to stop. Mr. Booth asked the operator to step down from the crane. I heard Mack try to communicate what he wanted the operator to do.

I observed no one directing the crane operator as he then lifted the shelter 10 to 12 feet in the air and then began to lower the crane boom at a rapid rate. This downward motion never slowed until the shelter bottom hit the 3" conduit stubups which were 16" high and poured in the concrete

slab. The shelter continued down as the conduits penetrated the floor until it was finally dropped onto the concrete slab with a crash. Again without any apparent direction, the operator then tried to pick the building up, but initially could only drag the building across the slab and the conduits as they damaged the shelter bottom even more. The crane operator finally lifted the shelter and it swung like a pendulum 3 to 4 feet from the ground.

I did not direct the movements of the crane in any way. I have no training in the movements of cranes and am not familiar with work required of a flagman. I did not assist in or coordinate any of the crane operator's work on March 27, 2003.

On the next day, March 28, while continuing with the electrical wiring in the existing buildings, I was approached by a gentleman from the Mobile Crane Service who had come to the site to take pictures. He asked questions about the accident. While we discussed the events, I showed him the area of damage to the shelter. Before he left the site I let Lowe-North Construction know that I had spoken to him. Upon Lowe-North's direction I completed the electrical work that could be done onsite without terminating to the new shelter. I finished these tasks on the morning of Friday, March 29 and flew back to Portland, Oregon later that same day.

These statements were made based upon my personal knowledge and are true and correct descriptions of my services as they were provided to Lowe-North Construction for the Brownsville National Weather Service TPMS project.

_David Bruggeman_
SIGNATURE

David Bruggeman
Affiant's name

DATE: June 15, 2004

SWORN AND SUBSCRIBED TO BEFORE ME by Cheryl Moore on this 15 day of June, 2004.

Cheryl A Moore
Notary Public in and for the State of Oregon

My Commission Expires: Oct 22, 2006



OFFICIAL SEAL
CHERYL A MOORE
NOTARY PUBLIC-OREGON
COMMISSION NO. 362288
MY COMMISSION EXPIRES OCT 22, 2006

-4-

May 1, 2004

To whom it may concern,

    My name is Mack Booth. I was employed by Lowe-North Construction for several years as their project superintendent and onsite representative for the installation of over 50 prefabricated buildings at various National Weather Service offices around the country.
    In March of 2002 I was sent to the Brownsville, Texas N.W.S Forecast Office to prepare for and install a TPMS building. As Lowe-North's superintendent onsite, I ordered a 175 ton crane from Mobile Crane Service Inc. for this specific job.
    On 3-27-02 Mobile Crane Service arrived onsite with their crane, operator and rigger to set the building on our concrete foundation. When the crane was rigged up and ready to set the building, I told the crane operator that "I would guide him over the conduit stubups when he was approximately 18 inches over the foundation." In broken English, the operator assured me that he knew what I had said. As the building was getting near the foundation the crane started to tip over. As this happened, the operator lowered the building down in a frantic motion causing the conduit stubups to penetrate the building floor. Then the operator in a panicked condition tried to pick up the building causing it to be dragged across the foundation and conduits, causing further damage to the foundation and building.
    This all happened as a result of the crane company using a 115 ton crane instead of the 175 ton crane that I had ordered. Prior to the crane operator dropping the building, no one informed me of Mobile Crane's decision to send a different crane and no one told me that the crane sent was only a 115 ton. After the accident the crane operator acknowledged that Mobile Crane had knowingly substituted a 115 ton crane instead of the 175 ton model.
    Dave Bruggeman of Cascade Summit Electric was sent by Lowe-North Construction to the Brownsville N.W.S. office specifically to complete the electrical terminations and tests associated with the project. Dave Bruggeman did not in any way direct, instruct, gesture or say anything to the crane operator that could have caused this accident.
    The decisions and actions that caused the crane to risk tipping and the building to be damaged were made entirely by Mobile Crane Service, Inc. I was the Lowe-North representative. To this I swear under oath on this day May, 5  2004

*Mack Eugene Booth*  5-5-04
Mack Eugene Booth
35277 West 123rd St.
Rayville, MO 64084

_____
Notary Public in and for the State of ~~Missouri~~ Kansas

My Commission Expires: 1-5-2006

NOTARY PUBLIC - State of Kansas
KATHLEEN EMMERICH
My Appt Exp 1-5-06

EXHIBIT "B"