# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 7 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, AS SUBROGEE OF LOWE-NORTH CONSTRUCTION | § § § | |
| | § | |
| V. | § § | |
| | § | |
| MOBILE CRANE SERVICE, INC., JESUS FRANCISCO AVALOS, RS INFORMATION SYSTEMS, INC., AND DAVE BRUGGEMAN, INDIVIDUALLY and d/b/a CASCADE SUMMIT ELECTRIC | § § § § § | C.A. NO. B-04-091 |
| | § § | |
| V. | § § | |
| | § | |
| UNITED STATES OF AMERICA AND THE DEPARTMENT OF COMMERCE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | § § § § § | |
| | § § | |

---

**DEFENDANT/THIRD PARTY PLAINTIFF MOBILE CRANE SERVICES, INC'S RESPONSE TO DEFENDANT/THIRD PARTY DEFENDANT DAVE BRUGGEMAN, INDIVIDUALLY AND D/B/A CASCADE SUMMIT ELECTRIC'S MOTION FOR SUMMARY JUDGMENT AND UNOPPOSED MOTION FOR CONTINUANCE**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Defendant/ Third Party Plaintiff Mobile Crane Services, Inc's Response to Defendant/Third Party Defendant Dave Bruggeman, Individually and d/b/a Cascade Summit Electric's Motion for Summary Judgment and Unopposed Motion for Continuance and respectfully shows the following:

I.

Based on evidence produced during discovery and upon current Texas law,

1

Defendant/Third Party Defendant Dave Bruggeman, Individually and d/b/a Cascade Summit

Electric(hereinafter Defendant Bruggeman) breached a duty it owed to Lowe-North Construction

and Defendant/Third Party Plaintiff Mobile Crane Services, Inc.(hereinafter Defendant Mobile)

and as such its actions were negligent. Defendant Mobile's Response is being filed pursuant to

Federal Rule of Civil Procedure 56(c) and Southern District of Texas Local Rule 7.

II.

OBJECTION TO SUMMARY JUDGMENT EXHIBITS OR PROOF

Defendant Mobile objects to the following exhibits and offers of proof contained in the

Motions for Summary Judgment enumerated elsewhere in this response.

Ojections is made to Exhibit B, because it contains hearsay statements and does not

merely recite facts, but attempts to make conclusions which are only to be determined by the trier

of fact.

III.

SUMMARY JUDGMENT EVIDENCE

As specifically indicated, each of the below designated matters are marked as an exhibit,

and attached hereto and incorporated at this point by reference. Attached hereto and incorporated

by reference as if fully set forth at length are Defendant Mobile Exhibits, offered as summary

judgment evidence for this response.

Such responsive evidence is as follows:

A. Affidavit of Sergio Zamora

B. Statement of Sergio Zamora

C. Statement of Frank Avalos

2

D.  Second Statement of Frank Avalos

E.  Statement of Robert Correa

F.  Affidavit of Jim Shawn

G.  Affidavit of Lynse Larance Guerra

IV.

LEGAL AUTHORITIES AND DISCUSSION

Defendant Mobile  offers all those exhibits referred to in this response in connection with the summary judgment proceedings currently before the Court.

Defendant Bruggeman offers as the basis of his summary judgment that no duty existed between Defendant Bruggeman and Lowe North Construction or Defendant Mobile and as a result of the lack of duty, the causes of action against Defendant Bruggeman should be dismissed.  However, Defendant Mobile asserts that a duty did in fact exist.

Negligence occurs when the defendant owed a legal duty to the plaintiff, the defendant breached the duty; and the breach proximately caused the plaintiff's injury.  *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).   The Texas Supreme Court has held that whether there is a statutory or common-law duty is generally a question of law.  *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex. 1991).  However, a jury question can arise when the facts giving rise to the duty are in dispute.  *Rodriquez v. Moerbe*, 963 S.W.2d 808, 816 (Tex.App.–San Antonio 1998, pet. denied).

Defendant Mobile asserts that the actions of Defendant Bruggeman in directing the actions of Avalos and Zamora on the day of the incident amounted to a voluntary assumption of a duty.  One who voluntarily enters an affirmative course of action affecting the interests of

3

another is regarded as assuming a duty to act and must do so with reasonable care. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Further, the person has a duty in exercising that reasonable care to see that the other person's body or property is not injured by their action. *Colonial Savings Association v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976).

Defendant Mobile refers the court to the affidavits and statements of Sergio Zamora and Frank Avalos which state that Dave Bruggeman was attempting to control the means in which they operated the crane. (See Defendant Exhibits A, B, C, and D which are attached hereto and incorporated by reference as if wholly setforth at length). The Seventh Circuit has found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). By attempting to control the manner in which they operated the crane, Defendant Bruggeman voluntarily undertook a duty to see that the crane was operated properly and that the unit making up the basis of the lawsuit was not damaged.

The exhibits attached by Defendant Bruggeman attempt to establish that he was not involved in directing the crane on the day of the accident. Therefore, a fact issue exists as to whether or not Defendant Bruggeman was taking actions which amounted to a voluntary assumption of a duty. Because there exists a genuine issue for trial, summary judgment should be denied under Federal Rule of Civil Procedure 56(e).

V.

## MOTION FOR CONTINUANCE

Defendant Mobile moves for a continuance pursuant to Federal Rule of Civil Procedure 56(f). Time is needed to locate Frank Avalos so that his deposition may be taken or he

4

may sign an affidavit. Additionally, time is needed to take the deposition of Defendant

Bruggeman and Mack Booth so that they may be questioned regarding the content of their

affidavits. If the court finds it necessary for the affidavit of Mr. Zamora to be produced in

another form, Defedant Mobile will need additional time for an interpreter to review the affidavit

under Title 28 U.S.C.A § 1827.

VI.

PRAYER

WHEREFORE, PREMISES CONSIDERED, the undersigned prays that the

Motion for Summary Judgment be denied. Further, Defendant Mobile Crane Services, Inc.

prays that its Motion for Continuance be granted. Defendant Mobile Crane Services, Inc. also

prays for general relief.

Respectfully Submitted,

Lynse Larance Guerra
State Bar No. 24032533
Federal I.D. No.31319
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Phone (956) 687-8203
Fax (956) 630-6570
ATTORNEY IN CHARGE
DEFENDANT MOBILE CRANE
SERVICES, INC.

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been either delivered or mailed to the following attorneys of record, or parties on this the 23rd day of September, 2004:

Melissa Murrah
Ken Irwin
KELLY, SMITH AND MURRAH
4305 Yoakum Blvd.
Houston, Texas 77006
Via CM/RRR

Nancy Lynn Masso
Office of the US Attorney
600 E. Harrison, Suite 201
Brownsville, TX 78520
Via CM/RRR

Jody Ray Mask
THORNTON SUMMERS
418 E. Dove Ave
McAllen, TX 78504
Via CM/RRR

Will Pierson
ROYSTON RAYZOR
606 N. Carancahua, Suite 1700
Corpus Christi, TX 78476
Via CM/RRR

Lynse L. Guerra

6

## CERTIFICATE OF CONFERENCE

I the undersigned acknowledge that I have consulted with the counsel listed below regarding the motion for continuance and their response is indicated.

Will Pierson and he is unopposed.

Ken Irwin and he is unopposed.

Nancy Masso and she is unopposed.

Jody Ray Mask and he is unopposed.

Lynse L. Guerra

## AFFIDAVIT

THE STATE OF TEXAS )
                      ) ss.
COUNTY OF HIDALGO )

BEFORE ME, the undersigned authority, on this day personally appeared , Sergio

Zamora, who by me being duly sworn on his oath, deposed and says:

"My name is Sergio Zamora. I am over the age of 18 and have never been convicted of a

felony or crime of moral turpitude.

On March 27, 2002, Frank Avalos and I went to a construction site in Brownsville,

Texas. We were supposed to move a building with a crane. Mac, Gary and Dave gave

instructions to Frank Avalos about how to move the building. The men would not let Frank and

me do it the way we wanted to. They told us how to move the building.

This statement is within my personal knowledge, is true and correct."

FURTHER AFFIANT SAYETH NOT.

SERGIO ZAMORA

SUBSCRIBED AND SWORN to before me, on this the 21 day of Sept. , 2004, to

certify which witness my hand and seal of office.

Notary Public in and for the.
State of Texas

My commission expires: 7/8/08

**MOBILE EXHIBIT**
**A**

## AFFIDAVIT

THE STATE OF TEXAS   )
            )
COUNTY OF HIDALGO   )

On this date, Lynse L. Guerra, personally appeared before me, the undersigned Notary Public, and after being duly sworn, stated the following under oath.

"1. My name is Lynse L. Guerra.  I am over 18 years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit.  I have personal knowledge of the facts stated, and they are all true and correct.

2. Sergio Zamora's affidavit has been translated from English to Spanish for him and he signed it after it was translated."

FURTHER AFFIANT SAYETH NOT.

_Lynse L. Guerra_
Lynse L. Guerra

SUBSCRIBED AND SWORN to before me, on this the 23rd day of September, 2004, to certify which witness my hand and seal of office.

CHERYL OYAMA
Notary Public
STATE OF TEXAS
My Comm. Exp. 06 - 26 - 2005

Notary Public in and for the State of Texas
My commission expires: 6/26/05

SERGIO RIGGER

Job: Lowe North Construction

Location: Brownsville, Tx.

Job Date: 3-27-02

Operator: Frank Avalos
Rigger: Sergio Zamora

Crane Size: 115 Ton

As per Sergio:

Frank and I were located at the center of the building at the end of the crane.
When we unloaded the truck to set it, I told Frank to talk to management in
charge. They told Frank they wanted to lift the building 8 feet to set and we felt it
was to high. Frank told them he wanted to put the building on the floor so he
could move the crane further back. They did not want to. And they told Frank to
continue any way. Frank proceeded and at 6 inches the building fell to the side
causing the floor to break.

Sergio Zamora

MOBILE EXHIBIT
B



FRANK "OPERATOR"

Job: Lowe North const.

Location: Brownsville, Tx.

Job Date: 3-27-02

Crane Size: 115 Ton

Operator: Frank Avalos
Rigger: Sergio Zamora

1ST REPORT

As per Frank:

On March 27, 2002 I arrived on location at the National Weather Station with Lowe North Construction to set a unit building. I set up my crane to where I could unload it from the haul truck to set on the ground and reposition my crane to get closer to the slab where it was going to be set at. But Mac & Gary told me that they wanted me to lift it from the truck and set it and I told them it was going to be hard because of the distance between the truck and slab and the small location we were in. So what I did, I repositioned my crane to get as close as possible as I could but not too far from the truck because of the other buildings that were there. I got as close as I could. I signaled the truck to back up next to the crane. I lifted the building off the truck and swung over towards the slab, started booming down, after about 10 to 12 feet of booming down it started to lift from the front end. That is when the building hit the bottom of the pipe that was sticking out of the slab. After this had happened, I safely brought the building back to a lifting position and held the building for about 1 ½ hour in the air, then they said to set it on the ground and asked me if I could get closer to set it and I said no, and that they needed a bigger crane to do what they were asking me to do. So I rigged up, left the location and the 175 ton crane finished off the job.

*More detailed report follows*

Frank Avalos

**MOBILE EXHIBIT**
**C**

**Job: Lowe North Const.**          *2nd More detailed report*

**Location: Brownsville, Tx.**

**Job Date: 3-27-02**

FRANK "OPERATOR"

2ND REPORT

**Crane Size: 115 Ton**

**Operator: Frank Avalos**
**Rigger: Sergio Zamora**

As per Frank:

On March 27, 2002, I was called out on a job to the National Weather Station in Brownsville, Tx. With Lowe North Const. Co.. Bill Hunter , my dispatcher, explained to me that since it was a very small location, he advised me to unload this building off the truck and set it on the ground and reposition my crane, and grab hold as many times as I had to.

But when I left the yard around 8:30 a.m. and I got to the location around 10:00 a.m., Mac, which was the person I was to contact was with Gary the Inspector. I explained to them what I was going to do and how I was going to do the job on unloading it from the truck, laying it safely on the ground, repositioning my crane, lifting it again until I got close enough to where I could set it on the slab safely. Mac and Gary said NO!, and that I needed to lift it from the truck and set it on the slab without repositioning the crane or setting the building on the ground. Sergio and I talked about it and tried to explain to them, that if I was to get close to the truck we were going to be too far from the slab, but they persisted that it needed to be done that way, they said it needed to de done by lifting it off the truck and set on the slab without moving.

So, what we did was, I went to get my crane to see how it would look like, so when I was backing the crane, it didn't fit in the small location. So, I told Mac if they could pull out some bushes that were there and they did, so I backed up the crane and measured and we couldn't turn the crane or swing because of the fence door, so we pulled out of the little drive way entrance and moved the crane about 5 feet more to the North so the crane could swing. When I was getting off of the drivers cab someone shouted that I was to close to the underwater sprinkler system. So, I set my crane about 38 feet from where I sat, I backed up on to the left side of the crane, close to my outrigger and rigged up the building to lift it up from the truck, swung over toward the slab, brought down about 1 foot off the ground and Dave popped out of nowhere telling my rigger, Sergio that I needed to lift the building 10 or 12 feet up in the air because that's the way they did the job and Sergio stopped me and call me down to where they were and told me that the building needed to be in mid-air and I talked to them and to Dave, and told them, that is not the way it worked as high as those pipes were sticking out of the slab, and that was as high as I was going. He didn't like it but that's the way we were going to do it, so I went back to the crane to get the building set on the slab and that's when the incident happened. The outriggers in front of the crane lifted off the ground and the building fell on pipes that were sticking out of the slab. That is when I told them, that is why I needed to set it on the ground and reposition my crane. That is when Mac told me if I could lift back up and I did and held it in mid-air about 2 feet of the ground for about one hour or two. During that time, Mac & Gary came up to me and told me that if I was to reposition my crane close to the slab could I set it that way and I told them that I could but I was not going to do it. So I asked them what they were planning to do with the building and Dave said to set it on the grass where the under water sprinkler system was with foam pads on the bottom of the building. (Which was originally what I had told them that needed to be done) We then rigged down and left the location around 4:30 p.m.

_Frank Avalos_

**MOBILE EXHIBIT
D**

ROBERT SAFETY

- 2nd more detailed report of 3-27-02 Incident On:

Location: National Weather Station-Brownsville, Tx.

Customer: Lowe North Construction

Equipment:    115T Crane
                Operator: Frank Avalos
                Rigger: Sergio Zamora

On or about 3-19-02 I Robert Correa was instructed by Bill Hunter (Mobile Crane Service Dispatcher) to contact Max with Lowe North Construction and meet at job site (corner of Boca Chica and Vermillion in Brownsville, Texas) to evaluate site for Crane Service to off load concrete box from carrier truck and to set on foundation slab.

I arrived at job site at approximately 9:00 a.m. and upon arrival I introduced myself and told them who I represented, two gentlemen approached me and the first gentlemen was Max and the second gentleman was Gary T. Harper, the system engineer with (R.S.I.S.) RS Information Systems, Inc.

Max showed me what they were expecting and where building was going to be set, and how much it weighed. I went to my vehicle and pulled out the measuring tape and took measurements of slab, also took measurements from edge of concrete to fence, asked Max for the weight of building and he turned over to Gary and they both told me it weighed 58,000 lbs. I then took out the load chart and showed both of them that the 115T crane could possibly do the job but that the crane had to move close to concrete slab. Max and Gary asked me what the next crane size was and I told them it was the 175 Ton. Gary and Max both asked me what the price difference between the two cranes and I showed them that the 175T crane would cost in the area of about 2,000.00 depending on time used, but the minimum charge would be some where about 2,000.00 and charges are from portal to portal. I then showed them that the 115T crane would cost about 1,200.00 also charges are from portal to portal and depending on time of use. Max and Gary both looked at each other and both agreed to order the 175T crane, Max ordered crane to be at job site on 3-27-02 8:30 A.m. I remained at job site to make a sketch of job site and proposed job. Max and Gary asked me what they needed to do for crane and I told them they needed to remove fence on east side of compound and left side entrance gate, also possibly the right side entrance gate, they were also to remove plants at entrance of left side of entrance ramp to proposed job, and both agreed to all. Max told me that he would call me or office to confirm that everything was still a go just before job.

      On 3-27-02 at about 8:00a.m. Bill Hunter called me and he had just noticed job ticket on the board, and told me that the 175T crane was still out on a job at Santa Fe Lease for El Paso

2

**MOBILE EXHIBIT**

**E**

Prod. And he asked me if the 115T Crane or the 175T was ordered for job and I responded that I could not remember so I returned to office to look at ticket and told Bill that the 175T crane was ordered. Bill asked me if the 115T crane would be able to do job and I told Bill that only if the 115T crane could move up closer.

The 115T crane was dispatched to job site and I then started back to Santa Fe Lease just south of Rachel, Tx. To the El Paso production facility. Frank Avalos was the 115T crane operator and Sergio Zamora was the rigger. Frank Avalos called me at about 1:00 p.m. and told me that there was a problem on site and some damage had occurred to building being set, I then told him to call Bill and advise him of the situation and I would wait for Bill to call me. At approximately 1:45 p.m. El Paso Production crew from the Jeffries facility called me to meet them in Edinburg to play golf with Gus, Bobby, Joe T., George, Jaime, and myself. I drove back to my house to change and pick up my golf clubs and met with them at 4:00p.m. and played until about 7:10 p.m.

Bill Hunter called me at about 6:30 p.m. to give me information for next day and asked I asked Bill if I could call him back later since I had customers with me and nothing to write on, Bill responded and told me it was O.K. and for me to call him when I got home which was about 7:45 p.m.

On 3-28-02 about 7:30 a.m., Mr. James Shawn asked me about the incident and I told him what Frank had relayed to me on 3-27-02 but I neglected to call Mr. Shawn expecting that since Bill Hunter was in the office, Bill would relay message to him and apparently not. Mr. Shawn instructed me to go to Brownsville to job site and take photographs and make a report and receive verbal possibly written statements from Max. I left Mobile Crane Facility at about 7:45 a.m. and arrived at job site at about 9:00 a.m., upon arrival I was greeted by Dave Bruggeman with Cascade Summit Electric and Max with Lowe North Construction. Max hardly said a word to me. Dave Bruggeman was the gentleman who made all remarks about the incident, was very vocal and at times irrate, he lead me through and showed me the site where crane was set he then lead me to interior of concrete building and showed me the floor damage, Dave then proceeded to show me where the metal conduit had apparently struck the floor from under side and also told me that he had already replaced the metal conduit. I asked him if I could take photographs and Dave agreed. Dave showed me some exterior damage apparently caused while trying to set building on to slab, and again photographs were also taken including the plate on left side of entrance door. Photographs were taken of interior, exterior and site at different angles.

According to Dave Bruggeman he said Frank (crane operator) lifted the box and it was too high while trying to set on concrete slab. Frank lowered the building too fast and did not have control of building. While trying to retract building after damage was done, Frank then dragged building over pipe and lifted building and once again regained control and held load in suspension for approximately 45 minutes, while deciding what to do next. I asked Dave Bruggeman to write a statement of the incident and he responded by saying that he would write it whenever he had some time, and that it would be sometime later because he was too busy. I also requested the same from Gary and I got no response from him. Dave informed me that they had already taken photographs of building after the incident and also while building had been suspended some photographs had been taken from underside of building showing damage of different areas. I did not observe

3

damage to any interior components or equipment except for floor damage and some on north side and one on south side exterior of building showing some scaling fallen off.  Dave called Mr. Lowe from his cell to main office before Dave released me to let Mr. Lowe know that I was at job site and that he (Mr. Lowe) would be in contact with us regarding this matter or incident . I asked Dave if there was anything else I needed to know before I left and he responded that was it, and I left approx. 10:45 A.m. I had requested copies of the photographs apparently taken by Dave after damage had occurred on underside of box and Dave responded that he had shipped photographs to main office and could not produce for me.

Robert Correa

## AFFIDAVIT

THE STATE OF TEXAS          )
                            )
COUNTY OF HIDALGO           )

On this date, Jim Shawn, president of Mobile Crane Services, Inc. personally appeared before me, the undersigned Notary Public, and after being duly sworn, stated the following under oath.

"1.   My name is Jim Shawn. I am over 18 years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated, and they are all true and correct.

2.   The copies of documents that are attached to my affidavit are true and correct copies of documents contained in the business records of Mobile Crane Services, Inc. These documents were made at or near the time of the events depicted therein. They were made by a person with knowledge of the events depicted therein. The documents are maintained by Mobile Crane Services, Inc. in the course of its regularly conducted business activity, and it is the regular practice of Mobile Crane Service, Inc. to make or maintain these types of documents."

FURTHER AFFIANT SAYETH NOT.

_____
Jim Shawn

SUBSCRIBED AND SWORN to before me, on this the 22 day of September, 2004, to certify which witness my hand and seal of office.

_____
Notary Public in and for the
State of Texas
My commission expires: 2/28/08

MOBILE EXHIBIT
F

SERGIO RIGGER

Job: Lowe North Construction

Location: Brownsville, Tx.

Job Date: 3-27-02


Operator: Frank Avalos
Rigger: Sergio Zamora

Crane Size: 115 Ton

As per Sergio:

Frank and I were located at the center of the building at the end of the crane.
When we unloaded the truck to set it, I told Frank to talk to management in
charge. They told Frank they wanted to lift the building 8 feet to set and we felt it
was to high. Frank told them he wanted to put the building on the floor so he
·could move the crane further back. They did not want to. And they told Frank to
continue any way. Frank proceeded and at 6 inches the building fell to the side
causing the floor to break.

*Sergio E Zamora*

Sergio Zamora



Job: Lowe North const.

Location: Brownsville, Tx.

Job Date: 3-27-02

Crane Size: 115 Ton

Operator: Frank Avalos
Rigger: Sergio Zamora

As per Frank:

On March 27, 2002 I arrived on location at the National Weather Station with Lowe North Construction to set a unit building. I set up my crane to where I could unload it from the haul truck to set on the ground and reposition my crane to get closer to the slab where it was going to be set at. But Mac & Gary told me that they wanted me to lift it from the truck and set it and I told them it was going to be hard because of the distance between the truck and slab and the small location we were in. So what I did, I repositioned my crane to get as close as possible as I could but not too far from the truck because of the other buildings that were there. I got as close as I could. I signaled the truck to back up next to the crane. I lifted the building off the truck and swung over towards the slab, started booming down, after about 10 to 12 feet of booming down it started to lift from the front end. That is when the building hit the bottom of the pipe that was sticking out of the slab. After this had happened, I safely brought the building back to a lifting position and held the building for about 1 ½ hour in the air, then they said to set it on the ground and asked me if I could get closer to set it and I said no, and that they needed a bigger crane to do what they were asking me to do. So I rigged up, left the location and the 175 ton crane finished off the job.

*More detailed report follows*

Frank Avalos

**Job: Lowe North Const.**

*2nd More detailed report*

FRANK "OPERATOR"

2ND REPORT

**Location: Brownsville, Tx.**

**Job Date: 3-27-02**

**Crane Size: 115 Ton**

**Operator: Frank Avalos**
**Rigger: Sergio Zamora**

As per Frank:

On March 27, 2002, I was called out on a job to the National Weather Station in Brownsville, Tx. With Lowe North Const. Co.. Bill Hunter , my dispatcher, explained to me that since it was a very small location, he advised me to unload this building off the truck and set it on the ground and reposition my crane, and grab hold as many times as I had to.

But when I left the yard around 8:30 a.m. and I got to the location around 10:00 a.m., Mac, which was the person I was to contact was with Gary the Inspector. I explained to them what I was going to do and how I was going to do the job on unloading it from the truck, laying it safely on the ground, repositioning my crane, lifting it again until I got close enough to where I could set it on the slab safely. Mac and Gary said NO!, and that I needed to lift it from the truck and set it on the slab without repositioning the crane or setting the building on the ground. Sergio and I talked about it and tried to explain to them, that if I was to get close to the truck we were going to be too far from the slab, but they persisted that it needed to be done that way, they said it needed to de done by lifting it off the truck and set on the slab without moving.

So, what we did was, I went to get my crane to see how it would look like, so when I was backing the crane, it didn't fit in the small location. So, I told Mac if they could pull out some bushes that were there and they did, so I backed up the crane and measured and we couldn't turn the crane or swing because of the fence door, so we pulled out of the little drive way entrance and moved the crane about 5 feet more to the North so the crane could swing. When I was getting off of the drivers cab someone shouted that I was to close to the underwater sprinkler system. So, I set my crane about 38 feet from where I sat, I backed up on to the left side of the crane, close to my outrigger and rigged up the building to lift it up from the truck, swung over toward the slab, brought down about 1 foot off the ground and Dave popped out of nowhere telling my rigger, Sergio that I needed to lift the building 10 or 12 feet up in the air because that's the way they did the job and Sergio stopped me and call me down to where they were and told me that the building needed to be in mid-air and I talked to them and to Dave, and told them, that is not the way it worked as high as those pipes were sticking out of the slab, and that was as high as I was going. He didn't like it but that's the way we were going to do it, so I went back to the crane to get the building set on the slab and that's when the incident happened. The outriggers in front of the crane lifted off the ground and the building fell on pipes that were sticking out of the slab. That is when I told them, that is why I needed to set it on the ground and reposition my crane. That is when Mac told me if I could lift back up and I did and held it in mid-air about 2 feet of the ground for about one hour or two. During that time, Mac & Gary came up to me and told me that if I was to reposition my crane close to the slab could I set it that way and I told them that I could but I was not going to do it. So I asked them what they were planning to do with the building and Dave said to set it on the grass where the under water sprinkler system was with foam pads on the bottom of the building. (Which was originally what I had told them that needed to be done) We then rigged down and left the location around 4:30 p.m.

Frank Avalos

ROBERT SAFETY

- 2nd more detailed report of 3-27-02 Incident On:

Location: National Weather Station-Brownsville, Tx.

Customer: Lowe North Construction

Equipment:    115T Crane
              Operator: Frank Avalos
              Rigger: Sergio Zamora

On or about 3-19-02 I Robert Correa was instructed by Bill Hunter (Mobile Crane Service Dispatcher) to contact Max with Lowe North Construction and meet at job site (corner of Boca Chica and Vermillion in Brownsville, Texas) to evaluate site for Crane Service to off load concrete box from carrier truck and to set on foundation slab.

I arrived at job site at approximately 9:00 a.m. and upon arrival I introduced myself and told them who I represented, two gentlemen approached me and the first gentlemen was Max and the second gentleman was Gary T. Harper, the system engineer with (R.S.I.S.) RS Information Systems, Inc.

Max showed me what they were expecting and where building was going to be set, and how much it weighed. I went to my vehicle and pulled out the measuring tape and took measurements of slab, also took measurements from edge of concrete to fence, asked Max for the weight of building and he turned over to Gary and they both told me it weighed 58,000 lbs. I then took out the load chart and showed both of them that the 115T crane could possibly do the job but that the crane had to move close to concrete slab. Max and Gary asked me what the next crane size was and I told them it was the 175 Ton. Gary and Max both asked me what the price difference between the two cranes and I showed them that the 175T crane would cost in the area of about 2,000.00 depending on time used, but the minimum charge would be some where about 2,000.00 and charges are from portal to portal. I then showed them that the 115T crane would cost about 1,200.00 also charges are from portal to portal and depending on time of use. Max and Gary both looked at each other and both agreed to order the 175T crane, Max ordered crane to be at job site on 3-27-02 8:30 A.m. I remained at job site to make a sketch of job site and proposed job. Max and Gary asked me what they needed to do for crane and I told them they needed to remove fence on east side of compound and left side entrance gate, also possibly the right side entrance gate, they were also to remove plants at entrance of left side of entrance ramp to proposed job, and both agreed to all. Max told me that he would call me or office to confirm that everything was still a go just before job.

On 3-27-02 at about 8:00a.m. Bill Hunter called me and he had just noticed job ticket on the board, and told me that the 175T crane was still out on a job at Santa Fe Lease for El Paso

2

Prod. And he asked me if the 115T Crane or the 175T was ordered for job and I responded that I could not remember so I returned to office to look at ticket and told Bill that the 175T crane was ordered. Bill asked me if the 115T crane would be able to do job and I told Bill that only if the 115T crane could move up closer.

The 115T crane was dispatched to job site and I then started back to Santa Fe Lease just south of Rachel, Tx. To the El Paso production facility. Frank Avalos was the 115T crane operator and Sergio Zamora was the rigger. Frank Avalos called me at about 1:00 p.m. and told me that there was a problem on site and some damage had occurred to building being set, I then told him to call Bill and advise him of the situation and I would wait for Bill to call me. At approximately 1:45 p.m. El Paso Production crew from the Jeffries facility called me to meet them in Edinburg to play golf with Gus, Bobby, Joe T., George, Jaime, and myself. I drove back to my house to change and pick up my golf clubs and met with them at 4:00p.m. and played until about 7:10 p.m.

Bill Hunter called me at about 6:30 p.m. to give me information for next day and asked I asked Bill if I could call him back later since I had customers with me and nothing to write on, Bill responded and told me it was O.K. and for me to call him when I got home which was about 7:45 p.m.

On 3-28-02 about 7:30 a.m., Mr. James Shawn asked me about the incident and I told him what Frank had relayed to me on 3-27-02 but I neglected to call Mr. Shawn expecting that since Bill Hunter was in the office, Bill would relay message to him and apparently not. Mr. Shawn instructed me to go to Brownsville to job site and take photographs and make a report and receive verbal possibly written statements from Max. I left Mobile Crane Facility at about 7:45 a.m. and arrived at job site at about 9:00 a.m., upon arrival I was greeted by Dave Bruggeman with Cascade Summit Electric and Max with Lowe North Construction. Max hardly said a word to me. Dave Bruggeman was the gentleman who made all remarks about the incident, was very vocal and at times irrate, he lead me through and showed me the site where crane was set he then lead me to interior of concrete building and showed me the floor damage, Dave then proceeded to show me where the metal conduit had apparently struck the floor from under side and also told me that he had already replaced the metal conduit. I asked him if I could take photographs and Dave agreed. Dave showed me some exterior damage apparently caused while trying to set building on to slab, and again photographs were also taken including the plate on left side of entrance door. Photographs were taken of interior, exterior and site at different angles. According to Dave Bruggeman he said Frank (crane operator) lifted the box and it was too high while trying to set on concrete slab. Frank lowered the building too fast and did not have control of building. While trying to retract building after damage was done, Frank then dragged building over pipe and lifted building and once again regained control and held load in suspension for approximately 45 minutes, while deciding what to do next. I asked Dave Bruggeman to write a statement of the incident and he responded by saying that he would write it whenever he had some time, and that it would be sometime later because he was too busy. I also requested the same from Gary and I got no response from him. Dave informed me that they had already taken photographs of building after the incident and also while building had been suspended some photographs had been taken from underside of building showing damage of different areas. I did not observe

3

damage to any interior components or equipment except for floor damage and some on north side and one on south side exterior of building showing some scaling fallen off. Dave called Mr. Lowe from his cell to main office before Dave released me to let Mr. Lowe know that I was at job site and that he (Mr. Lowe) would be in contact with us regarding this matter or incident . I asked Dave if there was anything else I needed to know before I left and he responded that was it, and I left approx. 10:45 A.m. I had requested copies of the photographs apparently taken by Dave after damage had occurred on underside of box and Dave responded that he had shipped photographs to main office and could not produce for me.


Robert Correa

4

Affidavit of Lynse L. Guerra

STATE OF TEXAS　　　　§
　　　　　　　　　　　　§
COUNTY OF HIDALGO　　§

On this day, Lynse L. Guerra, appeared before me, the undersigned notary public. After I administered an oath to her, upon her oath, she said:

1. "My name is Lynse L. Guerra. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. The evidence attached to this Motion for Summary Judgment are true, accurate and authenticated copies of the originals."

_____
Lynse L. Guerra

SWORN TO AND SUBSCRIBED before my by Lynse L. Guerra on this 23rd day of September, 2004.

_____
Notary Public, in and for the State of Texas

CHERYL OYAMA
Notary Public
STATE OF TEXAS
My Comm. Exp. 06 - 26 - 2005

**MOBILE EXHIBIT**
**G**